UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAKE GEYER WATERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 2:19-cv-00032-JDL |
| PAUL G. WHITE INTERIOR SOLUTIONS, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON THE DEFENDANT'S MOTION TO DISMISS**

Jake Geyer Waterman, who is self-represented in this proceeding, seeks damages against his former employer, Paul G. White Interior Solutions ("White Interior Solutions"), for violations of the Family Medical Leave Act ("FMLA") and for defamation (ECF No. 1). White Interior Solutions moves to dismiss the complaint for failing to state a claim upon which relief can be granted (ECF No. 12). Additionally, in a surreply to the motion to dismiss, Waterman seeks leave to amend the damages alleged in his complaint (ECF No. 15). For the following reasons, I deny the motion to dismiss with respect to the complaint's FMLA retaliation claim, grant the motion to dismiss with respect to the FMLA interference claim and the defamation claim, and grant Waterman leave to amend his complaint.

**I. BACKGROUND**

For the purposes of the motion to dismiss, I treat the following facts as true: Waterman began working for White Interior Solutions as a floor finisher and installer

on August 4, 2015.[1] Waterman's father had been diagnosed with three illnesses: degenerative bone disease, polycythemia blood disease, and a ruptured aorta. On or around April 8, 2018, Waterman's stepmother told Waterman that she had spoken with his father's doctor, and the doctor said his father would "most likely die" if he did not immediately return to the doctor for tests and treatment. ECF No. 1 at 7; ECF No. 13 at 3. Waterman had known about his father's worsening condition for weeks, and he had shared this information with his supervisor and two coworkers. However, Waterman did not know that his father was near death until this conversation with his stepmother.

Waterman missed work to care for his ill father from April 9 to April 16. Waterman left a voicemail with his supervisor on April 9, pursuant to alleged company policy. On April 10, he left a voicemail with Jonathan White, a co-owner of White Interior Solutions, explaining his father's situation. Neither Waterman's supervisor nor White responded to the voicemails. When Waterman did not appear for his shift on April 16, White sent him a Facebook message asking where he was. On April 17, Waterman responded that his father was "still pretty bad off[,] gets out of bed a couple hours here and there during the day." ECF No. 1-5 at 2. White advised Waterman to call his supervisor, and Waterman responded by sending several argumentative Facebook messages. White then messaged Waterman, "[D]on't worry

---

[1] In ruling on a motion to dismiss, a court may consider documents other than the complaint in narrow circumstances, including "documents the authenticity of which [is] not disputed by the parties; [] official public records; [] documents central to the plaintiffs' claim; or [] documents sufficiently referred to in the complaint." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Watterson v. Page,* 987 F2d 1, 3 (1st Cir. 1993)). Waterman has attached several exhibits to his complaint and to his response to the motion to dismiss. White Interior Solutions has filed a copy of an administrative decision which denied Waterman's claim for unemployment benefits. I thus rely on these documents to the extent they refine and contextualize the allegations in the complaint.

about your job[.] You left," and "[Y]ou abandoned your job according to everyone." ECF No. 1-5 at 4−5. After Waterman continued to send argumentative messages, White responded by instructing him not to return to White Interior Solutions' property.

## II. LEGAL ANALYSIS

White Interior Solutions moves to dismiss the claims against it under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (internal quotation omitted). Courts apply a two-pronged approach in resolving a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, courts must identify and disregard statements in the complaint that merely offer legal conclusions couched as factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Second, courts "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quotation marks and citation omitted). Generally, courts will accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Rodríguez–Reyes*, 711 F.3d at 52−53. Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Iqbal*, 556 U.S. at 679). Plaintiffs "need not plead facts sufficient to establish

3

a prima facie case," but the elements of a prima facie case "are part of the background against which a plausibility determination should be made." *Id.* at 54.

A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint "liberally" and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Additionally, the court may consider other filings by a self-represented plaintiff, "including his response to the motion to dismiss, to understand the nature and basis of his claims." *Wall v. Dion*, 257 F. Supp. 2d 316, 318 (D. Me. 2003); *accord Sirois v. United States*, No. 2:17-cv-324-GZS, 2018 WL 2142980, at *1 (D. Me. May 9, 2018) (quoting *Wall*).

A. **Family Medical Leave Act**

"[T]he FMLA entitles an employee to twelve weeks' leave per year for listed family and medical reasons, such as to care for a parent with a serious health condition." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 722 (1st Cir. 2014). To protect this right, "the FMLA and its accompanying regulations make it unlawful for any employer to, among other things: (1) 'interfere with, restrain, or deny the exercise' of any FMLA right; or (2) retaliate or 'discriminat[e] against employees . . . who have used FMLA leave,' such as by 'us[ing] the taking of FMLA leave as a negative factor in employment actions.'" *Id.* at 718 (quoting 29 U.S.C. § 2615(a)(1), 29 C.F.R. § 825.220(c)) (internal citations omitted).

The complaint alleges that White Interior Solutions violated the FMLA because it discharged Waterman for taking time off from work to care for his ill father.

Because Waterman does not specify whether his FMLA claim is for interference or retaliation, I analyze the complaint under both frameworks.

   1. **Interference**

"In order to make out a *prima facie* case for FMLA interference, plaintiff must show that (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intention to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Chacon v. Brigham & Women's Hosp.*, 99 F. Supp. 3d 207, 213–14 (D. Mass. 2015) (citing *Carrero-Ojeda*, 755 F.3d at 722 n.8). "The key issue is simply whether the employer provided its employee the benefits to which she was entitled per the FMLA." *Carrero-Ojeda*, 755 F.3d at 722.

The First Circuit has held that an employee's claim that her employer "used her FMLA leave as a negative factor in deciding to terminate her after she failed to show up for work" is a retaliation claim, not an interference claim. *Mellen v. Trs. of Bos. Univ.*, 504 F.3d 21, 26–27 (1st Cir. 2007); *see also Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 331–32 (1st Cir. 2005) (distinguishing between retaliation and interference and explaining that courts should characterize a FMLA claim as one or the other according to "the nature of the facts and the theory of the case" instead of according to the parties' characterizations). Thus, to the extent that Waterman's complaint claims that White Interior Solutions interfered with his right to FMLA leave by discharging him for attempting to take FMLA leave, "the interference claim is redundant of the retaliation claim" and should be dismissed.

5

*Pennington v. Hannaford Bros. Co.*, No. 2:17-cv-00053-JDL, 2018 WL 2746577, at *4 (D. Me. June 7, 2018) (citing *Chacon*, 99 F. Supp. 3d at 214).

Waterman's complaint appears to assert a separate FMLA interference claim based upon White Interior Solutions' failure to determine whether he was entitled to FMLA leave and to send him required notices after he informed White and his supervisor that he needed to miss work to care for his ill father. Once an employer learns that an employee needs leave for a reason that might qualify the employee for FMLA leave, the employer is obligated to provide certain notices under the FMLA:

> According to the Labor Department regulations that accompany the FMLA, when an employer "acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). This is known as an eligibility notice. Once the employer "has enough information to determine whether the leave is being taken for a[n] FMLA-qualifying reason . . . , the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances." *Id.* § 825.300(d)(1). This is known as a designation notice.

*Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 748 F.3d 418, 422−23 (1st Cir. 2014). An employer must also provide its employees a notice of employee "rights and responsibilities" under the FMLA. 29 C.F.R. § 825.300(c) (2018).

"'[F]ailure to follow the notice requirements' may give rise to an interference claim." *Bellone v. Southwick-Tolland Reg'l Sch. Dist.*, 915 F. Supp. 2d 187, 193 (D. Mass. 2013) (quoting 29 C.F.R. § 825.300(e)), *aff'd*, 748 F.3d 418 (1st Cir. 2014). "However, in order to recover for technical violations of the notice requirements, an employee must 'show that the lack of notice caused some prejudice.'" *Id.* (quoting

6

*Dube v. J.P. Morgan Inv'r Servs.*, 201 F. App'x 786, 788 (1st Cir. 2006)). Prejudice is established where "[a]n employer's failure to explain FMLA procedures properly and accurately . . . causes the employee to forfeit FMLA protections." *Crevier v. Town of Spencer*, 600 F. Supp. 2d 242, 257 (D. Mass. 2008) (quotation marks and citations omitted). For example, lack of notice is prejudicial if the employee can show that he "would not have structured leave in the same way had notice been provided." *Dube*, 201 F. App'x at 788.

The complaint does not allege that Waterman forfeited FMLA protections because of White Interior Solutions' failure to inquire into his FMLA eligibility or to provide him the notices he was entitled to receive. Rather, the complaint alleges that White Interior Solutions discharged Waterman for availing himself of those protections when it should have inquired further or notified him of his FMLA rights. Because Waterman's complaint alleges no prejudice apart from his termination, the claim that White Interior Solutions failed to follow FMLA notice requirements is "redundant of the retaliation claim" and thus fails to state a separate claim for FMLA interference. *Pennington*, 2018 WL 2746577, at *4.

**2. Retaliation**

"To make out a *prima facie* case of FMLA retaliation, an employee must show: (1) she availed herself of a protected FMLA right; (2) she was adversely affected by an employment decision; and (3) there was a causal connection between her protected conduct and the adverse employment action." *Carrero-Ojeda*, 755 F.3d at 719 (quotation marks, alterations, and citation omitted). Here, there is no dispute that Waterman was adversely affected by an employment decision because his

7

employment was terminated. Thus, whether Waterman has adequately stated a claim for FMLA retaliation depends on whether he availed himself of a protected FMLA right and, if so, whether there was a causal connection between his FMLA-protected activity and his termination.

### a. Protected FMLA activity

Waterman's complaint alleges that he availed himself of a protected FMLA right when he took leave to care for his ill father. As discussed above in the interference context, an employee has a right to FMLA leave if (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; and (4) he gave his employer notice of his intent to take leave. *See Chacon*, 99 F. Supp. 3d at 213 (enumerating the elements a plaintiff must establish to show he had a substantive FMLA right that his employer interfered with); *Colburn*, 429 F.3d at 330−32 (indicating that the same FMLA rights serve as the predicate for both retaliation claims and interference claims). White Interior Solutions focuses on the third element, arguing that Waterman's leave was not protected FMLA activity because he did not provide sufficient notice of his need for FMLA leave.

"When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b) (2018). "'Employees need only notify their employers that they will be absent under circumstances which indicate that the FMLA *might* apply,' after which it becomes 'the employer's responsibility, not the employee's, to determine whether a leave request is likely to be covered by the

[FMLA].'" *Kelley v. Mass. Bay Transp. Auth.*, No. 1:16-cv-11634-NMG, 2017 WL 10397970, at *5 (D. Mass. Sept. 5, 2017) (quoting *Coutard v. Mun. Credit Union*, 848 F.3d 102, 112 (2d Cir. 2017)); *see also* 29 C.F.R. § 825.301(a) (2018); 29 C.F.R. § 825.303(b).

Waterman's complaint alleges that he notified White Interior Solutions of his intent to take FMLA leave by leaving one voicemail on April 9 with his supervisor and one voicemail on April 10 with White. Though the complaint does not specifically allege what Waterman said in those voicemails, Waterman asserts that he "explain[ed] . . . [his] [f]ather's current situation" and "made sure . . . White was aware" of his father's incapacitation. ECF No. 13 at 1, 2. The fact that Waterman told White in his April 17 Facebook message that his father was "still pretty bad off" supports an inference that Waterman communicated his father's condition in the April 9 and April 10 voicemails. ECF No. 1-5 at 2. Waterman also asserts that he had been telling his supervisor and two coworkers about his father's worsening health condition "for weeks," which further suggests that the voicemails provided adequate notice of his intent to take FMLA leave. ECF No. 13 at 4; *see Germanowski v. Harris*, 854 F.3d 68, 74 (1st Cir. 2017) (suggesting that an employer's preexisting knowledge of the health condition at issue weighs in favor of finding that the employer had sufficient notice of the employee's intent to take FMLA leave).

Waterman provided still more information indicating that he might be eligible for FMLA protection when he informed White in his April 17 Facebook message that his father could only "get[] out of bed a couple hours here and there during the day." ECF No. 1-5 at 2. Under the FMLA regulations, an employee's statement that a

"family member [is] unable to perform daily activities" supports a finding that the employee provided "sufficient information for an employer to reasonably determine whether the FMLA may apply." *See* 29 C.F.R. § 825.303(b). Therefore, drawing all reasonable inferences in favor of Waterman, the allegations raise a plausible inference that Waterman provided adequate notice of his intent to take FMLA leave, and thus that he availed himself of FMLA protections by taking such leave.

### b. Causal connection

In addition to showing that he availed himself of a protected FMLA right, Waterman "must also show that there is a causal connection between [his] protected activity—taking or requesting FMLA leave—and [his] termination" to establish a claim for retaliation. *Chacon v. Brigham & Women's Hosp.*, No. CV 14-13235-FDS, 2016 WL 10517460, at *6 (D. Mass. Nov. 28, 2016). "There is some uncertainty, however, as to the standard by which causation must be proved." *Id.*

> A Department of Labor regulation implementing FMLA states that "employers cannot use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.C. [sic] § 825.220(c). However, in *University of Tex. SW. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court held that claims of retaliation under Title VII "must be proved according to traditional principles of but-for causation." *Id.* at 2533. Because the framework for analyzing retaliation claims under FMLA was adopted from the Title VII context, it remains an open question whether the *Nassar* "but-for" standard applies in the FMLA context as well.

*Id.* (internal citations omitted); *see also Chase v. U.S. Postal Serv.*, 843 F.3d 553, 559 n.2 (1st Cir. 2016) (declining to resolve the uncertainty). Because I conclude that Waterman has adequately alleged a causal connection even under the higher "but-for" standard, I need not resolve this issue.

10

Whether a causal connection exists between an employee's request for FMLA leave and his discharge is a contextual inquiry. *See Germanowski*, 854 F.3d at 74−75; cf. *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 25−26 (1st Cir. 2014) (reversing the dismissal of a sex-based retaliation claim because the district court "failed to read [the] complaint holistically and ignored relevant context"). "[T]emporal proximity is one factor" that courts consider when evaluating a causal connection. *Carrero-Ojeda*, 755 F.3d at 720. "[T]here are circumstances in which a '[v]ery close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection.'" *Germanowski*, 854 F.3d at 74 (quoting *Sánchez-Rodríguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012)). But "temporal proximity is not always enough." *Id.* Other relevant factors at the motion-to-dismiss stage include whether the employee's coworkers or superiors made "negative comments, complaints, or expressions of reluctance . . . about [the employee's] FMLA leave-taking" and whether the employer had an independent, preexisting reason to fire the employee. *See Carrero-Ojeda*, 755 F.3d at 720−21.

Here, Waterman allegedly missed work to care for his ill father beginning on April 9 and notified his employer of his intent to take FMLA leave soon thereafter, as discussed above. Nine days after Waterman's initial absence, White terminated his employment, stating, "[D]on't worry about your job[.] You left." ECF No. 1-5 at 4−5. White's statement and the "very close temporal proximity" between Waterman's initial absence and termination suggest that White discharged Waterman at least in part because Waterman attempted to take FMLA leave. *See Sánchez-Rodríguez*, 673

11

F.3d at 15 (finding that a three-month period between the employee's protected activity and discipline was "close enough to suggest causation").

Further, White's statement that Waterman "abandoned [his] job according to everyone" indicates that Waterman's coworkers or superiors made negative comments about his potentially FMLA-protected absence. ECF No. 1-5 at 5. Finally, nothing in the complaint indicates that White Interior Solutions had any independent reason to fire Waterman before he missed work to care for his ill father. These factors also support the inference that Waterman's attempt to take FMLA leave and his termination were causally connected. Thus, reading the complaint in the light most favorable to Waterman, I conclude that the complaint states a claim for FMLA retaliation.

**B.    Defamation**

The complaint also alleges that White defamed Waterman. "Defamation consists of: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Morgan v. Kooistra*, 941 A.2d 447, 455 (Me. 2008).

Waterman bases his defamation claim on Facebook messages he received from White, which stated, "[Y]ou abandoned your job according to everyone," and "You left." ECF No. 1 at 9; ECF No. 1-5 at 5. Waterman cannot establish that White defamed him by sending those messages because defamation requires publication to a third party. Waterman appears to offer the Facebook message to show that White

12

was telling other employees at White Interior Solutions that he had "abandoned" his job. But the complaint does not actually allege that White made any such statement. Thus, the complaint does not allege a publication to a third party, and it fails to state a claim for defamation based on the Facebook messages.

The complaint also appears to assert that White defamed him by "document[ing] many lies" in proceedings related to his application for unemployment benefits. ECF No. 1 at 8. This allegation is conclusory. A plaintiff must plead defamation in a manner "sufficiently detailed to the extent necessary to enable the defendant to respond." *Bishop v. Costa*, 495 F. Supp. 2d 139, 141 (D. Me. 2007). The allegation that White "documented many lies" is too vague to enable the defendant to respond and thus fails to state a claim for defamation.

Waterman attempts to provide greater specificity by asserting that, during the unemployment benefits proceeding, White said Waterman's "employment was terminated" and that Waterman was "not eligible for rehire." ECF No. 13 at 4. But Waterman's filings do not allege any facts indicating that the statements that he was terminated and ineligible for rehire were false. Thus, these statements cannot serve as the basis for a defamation claim.

Finally, White Interior Solutions argues that the defamation claim should be dismissed because statements that an employee quit or abandoned his position are not defamatory as a matter of law. Because I conclude that the complaint fails to state a claim for defamation on other grounds, as discussed above, I do not reach this issue.

## C. Leave to Amend

In a surreply to the motion to dismiss, Waterman seeks leave to amend the amount of damages he requests in the complaint. ECF No. 15. I do not consider the contents of the surreply in analyzing the motion to dismiss because "[n]either the Federal Rules [of Civil Procedure] nor the Local Rules permits a party to file a surreply to the moving party's reply." *Aero Union Corp. v. Aircraft Deconstructors Int'l LLC*, No. 1:11-cv-00484-JAW, 2012 WL 3679627, at *9 (D. Me. Aug. 24, 2012); *see also Ruiz-Rivera v. Riley*, 209 F.3d 24, 28 n.2 (1st Cir. 2000) (stating that self-represented plaintiffs are not exempt from the Federal Rules or local rules). However, as a matter of judicial efficiency, I grant Waterman leave to amend his complaint to reflect the change in the amount of damages sought.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that White Interior Solutions' Motion to Dismiss (ECF No. 12) is **GRANTED** in part, as to the FMLA interference claim and the defamation claim, and **DENIED** in part, as to the FMLA retaliation claim. Additionally, Waterman is **GRANTED** leave to amend his complaint to reflect the change in the amount of damages sought (ECF No. 15).

**SO ORDERED.**

Dated: November 5, 2019

                                                    /s/ Jon D. Levy
                                          **CHIEF U.S. DISTRICT JUDGE**